Good morning. Good morning, Your Honor. Can the court hear me okay? I would like to focus on a confrontation. You have a nice, low voice. Our microphones seem to pick up low voices better than higher pitched voices. Okay. Is this better? No, no. I'm saying it's fine. Thumbs up. Good. It's a good start. Okay. I would like to focus on a confrontation clause issue. The basic facts here are these. The case against my client on the kidnapping and sex assault charges was based primarily on the testimony of a man named Branson. Branson was an active participant in the same crimes. It was, in fact, originally charged with the same crimes. My client wasn't permitted to cross-examine Branson regarding the fact that he's testifying pursuant to a deal where he's getting, or he's supposed to get, in fact, he's getting less than four years for aggravated kidnapping, attempted rape, or unconscious 15-year-old. And at the same time, my client was also not permitted to cross-examine Branson regarding the fact that, despite all of his great incentives, as well as the fact that he's avoiding a mandatory life sentence for kidnapping, the prosecution sort of put a hammer, essentially, over his head. If the court deems his testimony not truthful, he's getting five more years in prison. And had the jury known about this, I think it's reasonable to say that they would have had a different impression regarding Mr. Branson's case. I'm sorry, how would this hammer, as you call it, have helped your client? I mean, if anything, it would seem to me if the jury thought this witness is under a particular compulsion to testify truthfully, that they would make the witness more believable. And they would say, well, we probably should pay much closer attention to this witness because he doesn't just have the usual fear of perjury that the state might prosecute him or not. He actually has a hammer from this very judge that says you're going to get five more years. Why wouldn't that have helped your client? Well, that would help my client because it would show that the prosecution... It harms your client. It harms my client because it prevents him from saying, look, this witness is already getting a great benefit, yet the prosecution doesn't feel sufficiently confident that he's induced, that his testimony is going to be truthful, and truthful meaning supporting their theory of prosecution, that they, on top of that, have to put the hammer on him. And, in fact, the prosecutor described it as a hammer. So I think the way it harms my client is the defense counsel can't tell the jury, look, this witness is already getting a new chance on life by cooperating. And in spite of all that, you have to have an additional threat to get him to say what the prosecution wants. I think that, you know, if I was a defense counsel trial, this is what I would argue. You know, that definitely impacts his credibility and how is he viewed. As far as I'm concerned, that's not the strongest part of your argument. I agree. It's always good to lead with the weakest part of your argument just to sort of soften this up, right? Right, right. Why don't you get to the strong part of your argument? Right. Even before you do that, I'll go back to another problem, which is why isn't this claim forfeited? Isn't that what the State Court of Appeals said? Well, actually, our position is that that's not what the State court said. The State court characterized its holding. Any claim of error is forfeited. Right. That's a quote. Right. But that's. So we know that's what they said. Why doesn't that count? But because earlier than that, the court said there is no constitutional violation. Then they lay out the. But why? It had belt and suspenders. Can we disregard the belt because they also had suspenders? If they clearly lay out two things as alternative holdings, then they still get the benefit of the belt even though they had suspenders. But in this case, I don't think they ever have they ever reach a definite conclusion as to one. They kind of throw it in in the middle of the constitutional violation discussion without analysis, without citation to authority. I think Harris v. Reed and this Court's case law requires a clear and unambiguous reliance on the procedural bar in order for it to be applicable. I don't know if that. And I don't know if I answered your question, Judge Kloft, and if I could go back to. Okay. And I agree with you, Judge Kuczynski, that I think the stronger point is obviously that they don't know that he's getting essentially more or less a free ride compared to what he could have gotten for giving testimony against my client. And I think the jury would have viewed it differently. But your client's lawyer, trial lawyer, seemed to agree with the trial judge, this California Superior Court judge, the Superior Court judge. Right. After ruling one case. It seemed to agree with the Superior Court judge. It said, yes, that's a good limitation. That's the right. It would confuse the jury. So there's the judge doing what defense lawyer says he should do, which is not get into the question of how much of a benefit. What's the judge supposed to do in that case? I mean, you might have an IAC claim, but I don't know how you can blame the judge. Well, two points in response to that, Your Honor. Number one, I think the lawyer makes a statement after the trial court has already ruled. This is what the limits are going to be. And then the lawyer says, well, Your Honor, I wasn't even planning to give. Well, this is why we have lawyers. You know, judges say this is a rule. And they stand up and say, no, Your Honor, this is an injustice. Here's why I'm going to argue with the jury. Change your mind and all that. That's what lawyers do. And sometimes judges change their mind. Judges say all sorts of stuff on the bench, particularly in trials. There are fluid situations. And I've seen judges reverse course when a lawyer, you know, post-course gets good argument from a lawyer. Well, Your Honor, we do, in fact, we do have an IAC claim. That's argument to, in the opening brief, that the trial court, the trial counsel was ineffective in agreeing to the limits. You know, I don't agree with the reading of the record saying that the lawyer caused the judge to make the error. I think he kind of, after the ruling is made, he kind of said, yes, Your Honor, I wasn't even planning to go there. And I think that's why he wasn't effective. Let me ask you this. The trial judge did allow Brunson to be impeached with some considerations that he got from the prosecution, right? Right, right. The jury was not kept completely in the dark about the bargain. So they heard that he got a substantial reduction in exchange for his testimony. No, I don't think they heard the substantial part. What exact words? I had it marked down as substantial in quotes. Maybe I miswrote it. What he was, what the trial court said, you could ask him whether under the range he gets substantially more time if he cooperates and substantially less if he doesn't. The problem is the lawyer never did that. Okay. Well, that's not a confrontation clause problem with the court, is it? Well, then it's an effectiveness of counsel, which is the substantial bargain. It came out that he got a deal. Yeah. The jury heard that he got a deal, yes. When you couple that with the fact that they found physical evidence at the crime scene that matched what your guy had at his house, the condoms, if you also figure into the fact that they had taped admissions of him in the police car talking to his brother, that were pretty damaging. And when you figure in that this other guy, Daniel, said that your guy invited the defendant to participate in the rape, how would any of this really make a difference? Well, and I'll start with the kidnapping. Because as far as the kidnapping count, which I think is the heaviest count in terms of sentence, others in Branson, nobody says that my client picked up the victim and took her down to a secluded area where she was, in fact, sexually assaulted. So you have to go by his testimony alone to convict him of that. Now, the statement that he makes to Daniel R. is afterwards. After she's down, he's supposedly coming back to the apartments. He meets Daniel R. and he says what he said. Does it really matter which one of them actually physically carried her? The way this case was presented to a jury, yes. Under the instructions that were given, no. But the thrust of the case was that Branson had nothing to do with the kidnapping. The point is there's no dispute she was at the party, and I believe there's no dispute that she was drunk. Right. She was. Okay. And we also know that at some point later, the defendant and his – and Branson are 85 yards away, I mean, the distance, whatever the distance was, with her, and she's being molested, right? Does it really matter which one of them carried her? Well, kidnapping – I think at the minimum, on the kidnapping, I think it matters because we don't have any corroboration, others and Branson, to say that my client picks up her and carries her down. And the way the prosecutor presented this case to a jury – Well, my question is, does it matter whether he picked her up – Yes. Or whether he just walked along while the other guy picked her up, and they both went down to rape her to engage in sexual molestation? Am I confused about the California law on this point? Well, I think – It doesn't – I mean, there are two Confederates in a crime, and who does the physical picking up? It doesn't seem to me to make any difference at all. Well, I think the difference is that when you do – when you look at the harmless error analysis, you're supposed to look at how the case was actually presented to the jury, not how it could have been presented. I agree with Your Honor that using the aiding and abetting instructions, the prosecution was perfectly – was going to try to say it doesn't matter. The problem is that is not how they tried it. And when you consider harmless error analysis, you have to look at how the prosecution actually tried the case and what impact this error had on that particular theory. Well, no, no. What we do is we say, okay, assuming it was harmless error, and I'm not sure we quite got past the error point, but let's say we are at the harmless error analysis. Well, we say, okay, we now imagine that the judge had put it in. How would the case have played out? And you can be pretty sure that the prosecution wouldn't have just said, oh, whoops, we now have some doubt about whether he carried it or the other guy carried it. We are going to argue the same case to the jury. I mean, wouldn't the prosecution at that point say it doesn't matter? The point is that two of them took her down and she was drunk. One of them carried her. The two of them carried them. The other one carried her. It doesn't matter. They bring her down to the secluded place and they have their way with her. Wouldn't that be the way it would have played out? No, it wouldn't. And I'll tell you why, Your Honor. Because all of the conduct you've described is after the kidnapping. In order for a defendant to aid and abet a crime under California law, his actions have to be with the knowledge of the act. It was an attempt to facilitate it. You know, that has to form before the actual aiding and abetting. If it's after, I think the case is called People v. Montoya from the California Supreme Court, that's not aiding and abetting. So if the prosecution decides, you know, if the judge allows cross-examination and the prosecution's response is, look, it doesn't matter, I think a reasonable defense counsel would say, wait a minute, it does matter. Because what is the evidence that prior to the supposed kidnapping that my client knew Branson's plan to sexually assault her and acted with intent to aid and abet her? I mean, we only have his word to take for it, that he carried her. Maybe they took her down to the river to have a chat with her. Well, since we don't know, if you put him outside of this, I don't know precisely how it went down. I agree with Your Honor that we know she was at point A, she got drunk, and she eventually got to point B where she was sexually assaulted. What we don't know, if you put Branson aside, precisely A, how she gets down, and B, what my client's role is in getting her down. I don't know whether he's around next to Branson. I'm sorry, can I? I know I've run out of time, but. You're out of time. We may give you a minute for rebuttal. Why don't we hear what the Governor has to say. Sure. Good morning, Your Honor. I apologize in advance. I'll probably punch the mic. May it please the Court, John Powell, Deputy Attorney General, on behalf of the Warden. First, I wanted to touch on Judge Clifton's point. Without butchering his pants and suspenders analogy, I think he was dead on in that the California appellate court did state that the confrontation claim was forfeited. I believe that the exact quote was, having agreed with these limitations, defendant cannot now assert that the court improperly curbed his cross-examination by refusing to permit questioning about the potential punishment faced by Branson. Any claim of error is forfeited. In any event. That leaves an ineffective assistance to counsel claim that he also brought. It does. And that's tied in with, in any event, there was no error. The confrontation clause guarantees a defendant the right to effective cross-examination. But the Supreme Court has consistently held that the right to effective cross-examination is not without limitations. Do I understand correctly, Branson – do I pronounce that right? Branson, Branson, what is it? What's the guy's name? Branson. Branson. Branson was facing a charge of – that carried a maximum of life with parole? Right. An indeterminate life term. Okay. And he was allowed to plead guilty to a crime that would have maybe get him as little as three years? Between three years and eight years. And he wound up getting the three years, as luck has it. Three years and eight months, yes, sir. And the trial judge did not allow the defense lawyer to establish that he had been charged with something that carries life and he could get as little as three. Am I right about that? You are correct. Why isn't that a mistake? Why doesn't that really go to his motive to tell the story that he told? Well, the concern was that the jury is not allowed to consider punishment. And the prosecutor's argument was essentially the jury will hear life, life term, and they don't understand the significance of an indeterminate life term. That could be explained by a jury instruction? Well, there was a Kelloggic jury instruction that the jury was not to consider punishment. You know what I mean? The significance of a life term could have been explained to the jury what that means. What I'm saying is you have a guy who's got a great incentive to try to get out of a life term, and the judge doesn't allow the defense to expose the fact that he's facing life, but if he plays his cards right, he'll get out in three years and eight months by testifying. I suppose it could have been addressed in the jury instruction, but that's not required by Supreme Court precedent. Well, but then you agree that there's a substantial motivation for Branson to testify in a certain way, because otherwise he's facing, quote, life, which translates to a long time. Correct. But the instruction you cited before that the jury wasn't supposed to consider punishment, I assume that was the defendant's punishment to avoid nullification. It didn't say that you aren't supposed to consider what Branson's got going for him here. Right. But they were, I mean, they were accomplices. So the jury was instructed that they were accomplices. So if the jury heard that Branson faced a potential life term, the reasonable inference would be that his accomplice, charged with the same offenses, also faced a life term. Do you think that's just a justification for depriving the defendant of the argument that this guy has a big incentive to lie and giving them a, I mean, the difference between life and three-some years is huge. But I do not believe that the defendant was robbed of the opportunity to put that bias before the jury. It was materially diminished, wasn't it? I'm sorry? It was materially diminished. I don't believe that it was. On cross-examination, defense counsel put out there that Branson faced a lot of years and that his testimony. And did it say how he faced after he testified? That this was a good argument. No, it did not. It's very many years ago. No, it didn't. Actually, he couldn't. Well, it hadn't been. He hadn't been sentenced. Let me just get back quickly to the Waver argument. What do you make of Harris v. Reed, the Supreme Court's 1989 opinion, where I thought they said is that if you want to have procedural bar, it has to be clear that the State court relied on the procedural bar. And I think we have cases subsequent to Harris, if I remember correctly, that say if there are two bases, substance and procedure, we presume we do not presume procedural bar. And I would not argue with your interpretation of the reading of that case. It's just a question. That's my recollection of what the case has said. I don't have it on the top of my head. But Harris v. Reed is pretty clear on that point. I agree that it is clear, yes. So this is not a case involving the court of appeals forfeiture or the claim of forfeiture. This ruling is standing side-by-side with the substantive ruling. It's really not significant in this case, right, under Harris? I would agree with that, yes, Your Honor. Okay. So your earlier argument to that effect was just wrong. Excuse me? So your earlier argument to that effect was just wrong. You thought you sort of thought past it. I was going to go with Judge Clifton on that. That's not your job, counsel. Your job, counsel, is to be forthright with the court. And I was being forthright in that the court made an alternative holding. They said it was forfeited but then went on to discuss. I understood Judge Clifton's question, and perhaps I misunderstood, that that was the controlling ruling, that the procedural bar forfeiture was a controlling ruling. And you now agree that, according to the Supreme Court, that is not the controlling ruling. It can't be, because it's both side-by-side with the substantive ruling. Correct. Okay. As to the we were discussing the term of years and the significance of setting forth the specific sentence, defense counsel cross-examined Branson at length of his He even went so far as to say that the type of testimony that Branson was giving was the type of testimony that the district attorney wanted him to give. I would just invite the court to examine the cross-examination in extra detail. It would have been better if he had been able to say to him, it's true, isn't it, that if you hadn't gotten this deal, you'd be facing a life term, and right now you're facing only about three years? It would have been a better cross-examination that way, wouldn't it? Perhaps, but, again, that's not the standard. The Supreme Court doesn't require that. Although maybe it could have been better, it wouldn't necessarily – that wasn't the determinative factor when it comes to whether he was given the opportunity for effective cross-examination. But it would have been better. Arguably. If you had been the defense lawyer, you would have wanted to be able to do that, wouldn't you? I would, Your Honor. Okay. Fair enough. And then just turning to the sufficiency of the evidence to support the rape conviction. I mean, that's essentially a state law issue, Your Honor. The Court of Appeal was interpreting a state statute which says that any sexual penetration, however slight, is sufficient to complete the crime. And that interpretation of state law is binding on this Court, and there was more than sufficient evidence to support that finding. Okay. Thank you. Thank you. Would you like a minute for rebuttal? Yes, Your Honor. You may take it. I have two points, and I may try to get to a cert if I have enough time. One, to respond to Judge Silverman's sort of question or concern concerning whether the jury would have been able to deduce what the defendant's punishment is. Well, they're not charged as conspirators. Any connection between Branson's punishment and my client's punishment, that would require some deduction. And to the extent that there was some concern, I think they could have come up with an instruction that covered that adequately. My second point is regarding the effectiveness of cross-examination without the actual evidence. I think both von Arsdall and Davis require that my client be given an opportunity to develop the record from which to argue what the bias is. Because otherwise, it's just an argument by a lawyer for a guy who is accused of rape and kidnapping. He has to have some facts, then, which he can take to a jury and say why Branson is having this great motivation to repeat what he said to the police earlier. And my cert. I mean, what could Branson have possibly have said to help your client? I mean, let's say he had been broken down in the stain and says, yes, yes, you got me. I, you know, what could he have said? I mean, the fact of the matter is the two of them, took this girl down to a secluded place and had sex with her while she was unconscious. I mean, you know, what could he have said? What could his testimony have made better or worse? He said I took it. It was my idea to take her down. I took her down. And then Mr. Beer joined me in sexual assault. Again, the point is we don't know what happened. But if we're talking hypotheticals. I see. I see. And I took her down. And then Mr. Beer just wandered by and said, hey, I'm going to join. I mean, I don't know what he could have said. But if suppose the jury just disbelieved everything he said, what would have been left? I think I think there would be a legitimate argument that the evidence is legal is insufficient as to my client. You still have Daniel. You still have the condoms at the scene. You still have them in the car talking how they're going to cook up a story. At a minimum, their case on kidnapping would be much weaker. I may argue that it was legal insufficient. I know how those arguments, how rarely do they succeed. But I don't have to meet that standard. But I think without Branson, at a minimum, on the kidnapping charge, the case gets very hard. Because you have to rely on the statement that occurred after the kidnapping and on the fact that he may have gone to his place to get Branson condoms. Nobody ever sees him actually bring them to Branson. And Branson himself earlier told the police that it may have been his younger brother who gave him condoms. So, I mean, the evidence. That's why I'm suggesting that Branson might even actually sort of come out and help your client on the withering cross-examination. Even then, I don't quite see how your client would. Well, I think if the jury disbelieves him, I think it helps my client to argue that the case on kidnapping is either against the weight of the evidence or legally insufficient. You know, I won't trap myself into arguing it's legally insufficient, but I will say it's a much weaker case for the State at that point. Okay. Thank you, Your Honor. Thank you. The case is signed and will stand submitted.
judges: KOZINSKI, SILVERMAN, CLIFTON